UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ANDRE HOWARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION H-05-2142 |
| | § | |
| METHODIST HOSPITAL SYSTEMS AT | § | |
| SUGARLAND, *et al.,* | § | |
| | § | |
| Defendants. | § | |

## Opinion on Dismissal and Sanctions

1.      *Introduction.*

In the last decade, Andre Joel Howard has filed ten lawsuits in this court.[1] Although two were "settled," six were unsuccessful for a variety of substantive and procedural reasons.  In two of the cases, he has been assessed costs or sanctions totaling $12,940.18 in the trial court.  His wife joined in one case and has one of her own.[2]  On appeal, he has been equally unsuccessful, having his appeal characterized as frivolous,

---

[1] Howard sued his mortgage company, three former employers, the U.S. court system, his former employer's insurer, the State of Texas, the Texas Workers' Compensation Commission, and two hospitals that refused to hire him.  *See Howard v. Bayview Loan & Servs.*, No. Civ. H-05-3667 (S.D.Tex. filed Oct. 21, 2005);  *Howard v. Harris County*, No. Civ. H-05-464 (S.D.Tex. Mar. 31, 2005);  *Howard v. United States,* No. Civ. H-04-704 (S.D.Tex. Feb. 25, 2004), *appeal dismissed for failure to pay fee,* No. 04-20317 (5th Cir. May 18, 2004); *Howard v. Volunteers of Am.,* No. Civ. H-99-3511 (S.D.Tex. Apr. 15, 2003);  *Howard v. EBI Cos.*, No. Civ. H-01-2906 (S.D.Tex. Nov. 27, 2001), *appeal dismissed as frivolous,* No. 02-20124 (5TH CIR. SEPT. 13, 2002);  *Howard v. Texas*, No. Civ. H-00-2953 (S.D.Tex. Dec 1, 2000), *appeal dismissed as frivolous,* No. 00-21128 (5TH CIR. SEPT. 14, 2001);  *Howard v. Mem'l Hermann Sys.,* No. Civ. H-99-575 (S.D.Tex. Dec. 16, 1999);  *Howard v. Univ. of Tex. Health Sci. Ctr.*, No. Civ. H-95-4719 (S.D.Tex. June 11, 1996), *aff'd,* No. 96-20589 (5TH CIR. DEC. 4, 1996).

[2] Howard and his wife sued their condominium manager over the placement of their satellite dish.  *Howard v. Randall's Mgmt.*, No. Civ. H-03-2138 (S.D.Tex. Dec. 5, 2003), *appeal dismissed as frivolous*, No. 04-20039 (5th Cir. Nov. 22, 2004).  Mrs. Howard also sued for social security benefits.  *Howard v. Barnhart*, No. Misc. H-05-224 (S.D.Tex. June 16, 2005).

costs assessed, and sanctions threatened.  His wife and he have also filed a judicial conduct complaint against Judge Lynn N. Hughes.[3]  Two cases are now pending, and this is one of them.

Andre Howard has sued the Methodist Hospital because it did not hire him at its Sugar Land facility, and he has sued Precheck, Inc., for furnishing Methodist information it used in its decision.

As usual, it is difficult to tell exactly what facts Howard has alleged, for his presentation is less than coherent.  His legal theories are irregular.  After a careful review of his pleadings, the court has determined that he has no claim recognized at law on the best interpretation of his story.

2.      *The Events.*

Howard applied for a job at Methodist in May of 2005.  It apparently made him a conditional offer of employment, with the condition being that his background be suitable for a worker at a hospital.  He was to start work on June 6, but Methodist invoked the condition on June 2, revoking the offer.

Methodist explained that research into his background had revealed an incident of some sort in 1984 that the hospital concluded should have been disclosed on his application and was material to his employability.  Methodist may have offered to discuss the issue of his non-disclosure and the incident itself later in the month without allowing Howard to begin working on the sixth.

Methodist has hired Precheck to investigate the backgrounds of its potential employees.  It apparently reported to Methodist that Howard had had some sort of legal problem in 1984.  Howard characterizes it in a supplement to his complaint as his "being investigated as a violent sex offender."

Howard enlisted in the United States Navy in May of 1971, for a two-year term. He is black.  Also, he is 54 years old and male.

---

[3] *In re Jud. Misconduct Compl.* No. 05-05-372-0053 (5th Cir. June 10, 2005), *aff'd,* (5th Cir. Jud. Council Aug. 18, 2005); *see* Response to Andre Howard, *Howard v. Methodist Hosp. Sys. at Sugarland*, Civ.No. H-05-2142 (S.D.Tex. filed June 21, 2005); *see* Response to Nellie Howard, *Howard v. Barnhart*, Civ. No. H-05-224 (S.D. Tex. June 16, 2005).

3.     *Claims.*

The court has divined six legal theories relied on by Howard.

    a.     Methodist denied him an equal employment opportunity based on his race.

    b.     Methodist denied him the benefit of its internal procedures for progressive discipline.

    c.     Methodist denied him employment or re-employment rights that were his as a veteran.

    d.     Precheck slandered him by reporting the incident.

    e.     Methodist slandered him.

    f.     Under a rule of the Supreme Court, this court should allow him to proceed with the payment of fees because he is a seaman in time of war.

4.     *Equal Opportunity.*

Howard does not have the letter from the Equal Opportunity Commission that triggers his brief opportunity to bring a suit. His claim of race-based employment actions must be dismissed.

Howard does not plead a factual basis for the claim. He has not identified a non-black who was hired for the same position and who had a similar background. He only quibbles about whether he remembers the specific incident – not whether that type of incident exists in his history – and whether the incident was itself the product of "racial profiling." Methodist is not responsible for discriminatory acts of others 21 years ago; it is entitled to rely on the records.

Parenthetically, Precheck cannot be sued for employment opportunity since it never employed Howard and Howard never applied for employment at it.

5.     *Personnel Manual.*

Howard cannot rely on the hospital's personnel manual for a claim to its progressive discipline. He may not have been able to rely on it as a contract if he had become an active employee; that would depend on all of the terms of his deal with

Methodist.  Howard was never an employee, and he is not being disciplined.  Being not hired is distinct from being fired.

6.    *Veteran*.

Howard is a veteran from a period of active combat.  He has no veteran's re-employment rights because he did not leave a job at Methodist to join the Navy.  He has no claim for discrimination against a veteran because his own recitation of the facts says that Methodist denied him employment because of a civilian incident a decade after he left active duty.  He was apparently in the reserves until 1977.

He never suggests a fact that would lead one to conclude that Methodist rejected his application for any reason connected with his national service.  Instead, even he says that it used a defective criminal incident from his civilian period.

7.    *Slander*.

Howard sues Precheck for having defamed him when it reported what it found in its research into Howard's background.  The published fact must be false, and Howard's complaint concedes that an incident exists in his past and that its nature is difficult.  The fact may have a perfectly reasonable explanation or a plausible justification, but that does not make it false – arguable maybe.

The fact must be published.  Precheck disclosed its research only to Methodist.  Precheck is responsible only for its knowing repetition of a false, defamatory fact to some one who does not have a legitimate interest in the person and data.  This is called a qualified privilege.  Precheck has the same immunity from liability for its conversations and reports to its clients that an employee at the client would have in "publishing" a fact within the staff of the client.

The knowing publication of a false fact without justification must have damaged Howard in some particular way.  He cannot use the loss of the job opportunity as a damage because he would not have had the opportunity if he had told the whole truth to the hospital in his application.  At the stage of Precheck's publication, Methodist had two problems with Howard as a potential employee; he had the difficult history, and he did not voluntarily disclose it in his application.  Howard's incomplete answers were cause enough for him to lose the offered job.  It was not the report by Precheck of a false fact that injured Howard; it was, rather, Howard's own dissembling.  If he had told the truth about his past, he might have been able to work with the hospital as indicated by its initial response in offering a later meeting.

Methodist only published the fact to Howard himself, and that is not a publication that injures his reputation.  It might be insulting, but it is not slanderous.  Slander takes a third party.

8.      *Seaman's Privileges.*

Howard must pay his costs of court.  The rule of the Supreme Court of the United States does not apply to United States District Courts.  He does not appear to qualify if he were in the Supreme Court, but it will decide that for itself if it has an occasion.

9.      *Abusive Litigation.*

Howard has used the opportunity to initiate litigation to assuage his hyper-sense of injustice and entitlement and hypo-comprehension of law and fact.  Open courts have limits, and Howard has reached them.

His use of lawsuits is closer to delusional than malicious, but it still inflicts high costs on the court and, more important, on those unlucky enough to have dealt with him however tangentially.  This is not a case of the little guy who accidentally imposes costs on the big guys.  Howard is not beggaring the establishment or corporate America.  He is beggaring his fellow, workers, consumers, and taxpayers.

Because of this baseless suit, Methodist will have spent enough on staff time and legal fees to have employed an honest applicant for a year, a person who would have furnished medical care instead of transaction costs.  Because of this baseless suit, Precheck will have to recover its extra costs by increasing its charges to employers that use it.  These higher costs reduce the employment or service they can offer without raising prices themselves to the detriment of the public. Because of this baseless suit, this court will have fewer resources in time and money to devote to genuine cases in the community it serves.  In the end, workers, consumers, and taxpayers will have – again and again – paid for Howard's compulsive suing.

Howard will be precluded from filing another lawsuit in this court and its adjuncts until he has advance written permission of this judge and until he has made  good-faith payments on his cost and sanctions obligations here and in the court of appeals.

Howard will be compelled to pay these defendants $5,000 each.  The quantum is modestly arbitrary.  It is the court's estimate of one-half of the costs for legal fees for the defendants, and unless the defendants ask for reconsideration to recover their full costs – legal and administrative – this will be the court's order in the hope of reducing every one's transaction cost in what is probably an empty gesture, except that abstracted it will attach to his land titles and estate.

10.     *Conclusion.*

Howard's claim under statutes about equal employment will be dismissed against Methodist without prejudice, but they will be dismissed for failure to state a claim against Precheck.

Howard's contractual and slander claims will be dismissed against both defendants for failure to state a claim.

Methodist moved to strike Howard's statement in aid of his complaint that he filed in response to a unruled-on motion for a more definite statement, but it will be allowed despite its being done in violation of the rules.  After all, it was counterproductive for Howard.

As a partial shifting of the costs he imposed on them, Howard will be assessed sanctions of $5,000 payable immediately to Methodist and $5,000 payable immediately to Precheck.

Finally, Howard will be precluded from filing another case in this court – including its bankruptcy court – without advance written permission from this judge and without his having made good-faith payments on his costs and sanctions obligations here and in the court of appeals.  Because he has continued to flout the court's orders, a future filing that does not meet the standards of the preclusion order may be met with coercive contempt.

Signed December 13, 2005, at Houston, Texas.


_____
Lynn N. Hughes
United States District Judge